**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**MARY SUITER**                                                                                  **PLAINTIFF**

**v.**                                      **3:06-CV-00127 GTE**

**ALLSTATE INSURANCE COMPANY**                                   **DEFENDANT**

**ORDER**

Before the Court is a motion in limine filed by Defendant Allstate Insurance Company ("Allstate"). Therein, Allstate seeks to limit the amount of underinsured motorist ("UIM") benefits available to Plaintiff Mary Suiter under her own policy to $50,000. Plaintiff Mary Suiter objects, contending that she is entitled to the full $100,000 in benefits specified in her policy. For the reasons stated below, the Court concludes that Allstate's motion must be granted. Accordingly, Plaintiff may not recover more than $50,000 under the terms of her UIM coverage with Allstate.

**FACTUAL BACKGROUND**

On May 16, 2003, Plaintiff Mary Suiter ("Suiter") was driving a 2002 Dodge Stratus owned by her daughter, Shawn Suiter, westbound on State Highway 14 in Jackson County, Arkansas, approximately four miles East of the Newport city limits. At the same time, Scott Atkins was driving a 1992 Toyota Celica in southbound on County Road 249. He ran a stop sign and collided with the vehicle driven by Suiter. It is undisputed that Mr. Atkins was intoxicated at the time of the collision. Allstate has also admitted that the subject collision was proximately caused by negligence on the part of Mr. Atkins.

Suiter alleges that she suffered serious and permanent injuries in the crash. Her injuries include the following: fractures of her distal radial bones in her right and left wrists; a fracture of the right kneecap (patella); a fractured left rib; and numerous abrasions, laceration and contusions,

including bad bruising of her chest and stomach area. Suiter works as a medical technologist. She claims to have only about 55 to 65 % capacity in her right wrist and only about 25 to 30 % capacity in her left wrist.

Mr. Atkins' insurance carrier paid its $25,000.00 policy limit to Mary Suiter. Additionally, Suiter recovered the $50,000 underinsured motorist policy limit available under a separate Allstate policy covering the vehicle owned by Plaintiff's daughter, Shawn Suiter, and driven by Plaintiff Mary Suiter. Mary Suiter also has a separate policy with Allstate, which provides underinsured motorist coverage with limits of $100,000.00 per person, per accident. Plaintiff Suiter seeks in this lawsuit to recover the $100,000 in UIM benefits available under her policy with Allstate.

This case is scheduled for trial the week of May 7, 2007.[1]

## DISCUSSION

A legal dispute has arisen concerning the amount of UIM benefits available to Suiter under her Allstate policy. Allstate seeks to apply a credit of $50,000 against the $100,000 otherwise available to Suiter, thereby limiting the available UIM benefits to $50,000. Suiter claims that she is entitled to recover the entire $100,000 in UIM benefits specified under her policy.

Allstate's argument is based on the following policy language:

**If There is Other Insurance**

If the insured person was in, on, getting into or out of a vehicle you do not own which is insured for this coverage under another policy, this coverage will be in excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, we will only pay the amount by which the limit of liability of this policy exceeds the limit of liability of that policy.

Arkansas' UIM statute is silent on the issue of whether UIM coverage can be reduced by

---

[1] Suiter asserts in her trial brief that only two issues remain in dispute: (1) whether Mary Suiter was also guilty of negligence which was a proximate cause of the collision; and (2) whether her injuries warrant a recovery in excess of the $75,000 she has already received.

- 2 -

other available UIM benefits. *See* Ark. Code Ann. § 23-89-209. Allstate contends that in the absence of any statutory prohibition on such reduction, it is entitled to the application of its policy language, pursuant to which the $50,000 in UIM benefits previously recovered under Plaintiff's daughter's policy will be applied to Plaintiff's UIM policy limits of $100,000, leaving only $50,000 in available benefits. Conversely, Plaintiff Suiter argues that she is entitled to the full benefit of her bargain and that she may recover the full limits of the $100,000 in UIM benefits specified under her policy.

Plaintiff does not dispute that the policy language, if applied, would require the requested set-off. Instead, Plaintiff contends that Arkansas' UIM statute and applicable case law, read together, "prohibit a UIM carrier from claiming a credit, offset, or reduction from collateral source payments as to the insured who actually purchased the policy." (Pl.'s resp. at p. 4). Plaintiff draws a distinction between the purchaser of UIM coverage and additional insureds who benefit from UIM coverage but do not have a direct contractual relationship with the insurer.

The parties dispute the significance of the decision in *Shelter v. Mut. Ins. Co. v. Williams*, 69 Ark. App. 35, 9 S.W.3d 545 (Ark. App. 2000). Defendant Allstate contends the decision is controlling here; Plaintiff Suiter contends the case is distinguishable based on the fact that the injured/deceased passenger did not purchase the policy in question, but rather was seeking to recover UIM damages under his father's policy. This may be a distinction, but it appears to be a distinction without a difference.

In *Shelter*, Christopher Williams was riding as a passenger in a car driven by Howard, which was struck by a vehicle driven by Patten. Williams died as a result of injuries sustained in an accident. Williams' estate recovered $100,000 in liability benefits paid by Patten's insurer and $25,000 in UIM benefits paid by Howard's insurer. Williams' estate then attempted to recover

$25,000 in available UIM benefits under Shelter, which had issued a policy to Williams' father (and presumably extended coverage to his son). The Court of Appeals construed an "other insurance" clause contained in William' policy and concluded that it barred any recovery. *Id*., at 36-37, 9 S.W.3d at 546-47.

The *Shelter* court expressly held that "stacking of underinsured motorist coverages is not prohibited by the statute but may be precluded by an applicable anti-stacking clause in the policy." *Id.*, at 39, 9 S.W. 3d at 548. Despite this language in *Shelter*, Plaintiff essentially contends that Arkansas law mandates that stacking of UIM motorist coverage be permitted so long as the direct beneficiary of the stacking is the person who actually purchased the policy. The Court rejects this argument.

Plaintiff attempts to buttress her argument by pointing to the recent Arkansas Supreme Court decision in *Nash v. American Nat'l Property & Casualty Co.*, __ S.W.3d __, 2007 WL 986880 (Ark. App. April 4, 2007). *Nash* does not help Plaintiff's cause here. Accepting that Mary Suiter is the <u>purchaser</u> of the insurance coverage in question, there is nothing in Arkansas' UIM statute which prohibits Allstate from prohibiting the stacking of UIM coverage as to the insured purchaser. Plaintiff argues that allowing the requested offset will run afoul of Ark. Code Ann. § 23-89-209(a)(3), which states:

> The [UIM] coverage shall enable the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury to or death of an insured which the insured is legally entitled to recover from the owner or operator of another motor vehicle whenever the liability insurance limits of the other owner or operator are less than the amount of the damages incurred by the insured.

This provision simply sets forth the definition of UIM coverage. It does not prohibit the insurer from preventing the stacking of available UIM coverages. Such view is strengthened by a

- 4 -

separate provision in the statute which provides greater protection for the insured vis-a-vis tortfeasors. Ark. Code Ann. § 23-89-209(a)(5) provides that:

> Coverage of the insured pursuant to underinsured motorist coverage shall not be reduced by the tortfeasor's insurance coverage except to the extent that the injured party would receive compensation in excess of his or her damages.

Thus, coverage obtained from the tortfeasor may not be applied to reduce UIM benefits payable to an insured, but the statute is silent on reductions to UIM coverage based on coverage obtained from non-tortfeasors. All Arkansas courts to consider the issue have concluded that Arkansas' UIM statute does not prohibit the stacking of UIM coverages. *See Shelter, supra*, 69 Ark. App. at 548-49.

Nor does the Arkansas Supreme Court's pronouncement that the purpose of UIM coverage is "to provide compensation to the extent of the injury, subject to the policy limit" assist Plaintiff's cause, as suggested. *Clampit v. State*, 309 Ark. 107, 110, 828 S.W.2d 593, 595 (1992). Plaintiff Suiter contracted for and accepted an insurance policy with a UIM policy limit of $100,000. The policy specified that in certain circumstances such coverage would be excess to other available UIM coverage. Plaintiff is entitled to recover a total UIM benefit of $100,000, but there is nothing in the policy that guarantees her the right to stack other applicable, non-tortfeasor UIM coverage.

It is undisputed that the $50,000 set-off for the UIM benefits paid by Shawn Suiter's separate Allstate policy technically qualifies as "other insurance" within the meaning of the policy language.[2] After applying the set-off requested by Allstate, Plaintiff will still be entitled to recover $50,000 in

---

[2] Plaintiff also argues that it is unjust to permit Allstate to collect two premiums – one from Shawn Suiter for her $50,000 in coverage and a second premium from Plaintiff Suiter for her $100,000 in UIM coverage – but be permitted to apply the requested offset. This argument is off point. The fact that Allstate is also Shawn Suiter's carrier is fortuitous and does not affect the analysis here.

UIM benefits under her own policy.  Plaintiff is not being deprived of the benefit of her bargain because she is getting what she contracted for: $100,000 in total UIM coverage.

## CONCLUSION

For the reasons herein stated,

IT IS THEREFORE ORDERED THAT Allstate Insurance Company's Motion in Limine (Docket No. 18) be, and it is hereby, GRANTED.  Allstate is entitled to apply a set-off of $50,000 for the UIM benefits Plaintiff has already collected.  Accordingly, Plaintiff may not recover more than $50,000 under the terms of her UIM coverage with Allstate.

IT IS SO ORDERED this  1st  day of May, 2007.

                                            _/s/Garnett Thomas Eisele_____
                                            UNITED STATES DISTRICT JUDGE